ALMIRAN S. COLE, Appellant, *v.* ALEXANDER G. TYNG *et al.,* Appellees.

APPEAL FROM PEORIA COUNTY COURT.

Where a party purchases a warehouse receipt for grain, which he is informed is subject to charges for storage, he will be liable for such charges, and the warehousemen have a lien therefor.

If the warehousemen permit the grain to be removed before charges paid, they do not thereby lose their recourse against the holder of the receipt.

TYNG & BROTHERSON brought two suits against Cole, before a justice of the peace—one for $177.98, in their own right, for wheat sold and delivered; and one for $534.93, to the use of their assignees, *for storage on corn,* on which last Cole was

Cole *v.* Tyng et al.

credited with $244, for sacks sold to Tyng & Brotherson. On appeal to the County Court, by Cole, the two suits were consolidated and tried together.

The suits were upon accounts as follows:

A. S. Cole,                Bought of Tyng & Brotherson,

169 30-60 bush. Wheat, *a* $1.05...................................$177.98

A. S. Cole, Esq.,

            To J. K. Cooper & R. C. Grier, Assignees of Tyng & Brotherson.

Storage 23,280 Bush. of Corn, from June 1st, 1855, to July 15th, (1½ months) *a* 1½c., $3.. .......................................... $353.70

Storage 15,265 Bush. of Corn, from July 1st, 1855, to Aug. 15, (1½ months) ................................................. 152.65

Storage 5,718 Bush. of Corn, from Aug. 15, 1855, to Sept. 15, *a* ½c..... 28.58

                                 $534.93

1856, By Bill of Sacks ......................................... $244.00

                                 $290.93

The wheat and sack accounts were mutually admitted. The controversy was about the storage. If this was found for the defendant, then Cole was to have judgment for the difference between the price of the wheat and his sacks; otherwise judgment was to go for plaintiffs, for so much as the jury should find to be their due, deducting the price of the sacks. The main facts about the storage are these: Curtenius & Griswold held the warehouse receipts of Tyng & Brotherson, for 28,000 bushels of corn *in a particular building*. In February, 1855, and while Curtenius & Griswold still owned the corn, the house where it was stored broke down, and by advice and consent of Curtenius the corn was moved into other buildings. Curtenius & Griswold sold to Kellogg, transferring the receipt. By the terms of this receipt the corn was *subject to storage*, if allowed to remain after June 1st, 1855.

Kellogg took out some four thousand bushels, and sold the residue—say 23,500 bushels—to Cole, in the spring of 1855, also transferring the receipt; and Cole agreed with Kellogg to pay to Tyng whatever storage should accrue on the corn after the said June 1st, 1855.

Cole took away none of the corn before the middle of July, and the last of it not till in September following.

Tyng & Brotherson became partners and joint owners of the warehouses on the 1st of June, 1855, and, at the usual rates, storage accrued as charged in plaintiffs' bill.

The corn was stored in places convenient for Cole, and he received it from thence without objection.

On this showing, the jury found for plaintiffs the amount of

their two accounts, together with some interest, less the sack account of defendant.    Plaintiffs thereupon entered a remittitur of the interest, and judgment was rendered in favor of plaintiffs for $468.91, just the amount of their two accounts, less the $244 due defendant for sacks.

The following instructions, which received the approval of the court, relate to matters of general interest, and are therefore inserted at length.

Instructions for plaintiffs:

1.    That a warehouseman who receives corn or other grain in store to be delivered at a future day, is responsible for its safe delivery to whoever may be authorized to receive it at the time of delivery, whether he was the owner when it was stored or not, and is entitled to a lien upon the property stored for any charges he may rightfully have for storage on it in the mean time, and has the right to enforce said lien against said property at or before the delivery of the same, unless provided otherwise by contract between the owners; and the fact that the grain stored may have been mixed with other grain, so that the identity of this particular grain is lost, did not affect the right to storage, provided such mixture was made with the consent of the owner, and the warehouseman has on hand during the time a sufficient quantity of grain of like quality to meet the demand and to be delivered when called for.

2.    That the place where the corn was stored is immaterial as to the question of storage, if the owner receive the corn without objection from the place where it is stored.

3.    That when grain on store in a warehouse is, by consent of the owner, mixed with other grain, though the owner in such case loses his right of property in the specific grain stored, he becomes entitled to an aliquot share of the common mass, and the acceptance by him, without objection, of a like amount, from such common mass, and with knowledge that it is not the identical grain stored, stops him from refusing to pay storage on that account.

4.    If the jury believe, from the evidence, that Tyng & Brotherson had grain enough on hand to supply the demand of Cole, and were ready and willing to deliver the same at all reasonable hours, when called for, it shows a performance of their contract, so far as the question of delivery is concerned.

5.    If the jury believe, from the evidence, that Kellogg owned a quantity of corn in the warehouse of Tyng & Brotherson, which was subject to storage, or liable to become so, and that he sold the corn to Cole with the understanding that said corn would become or was subject to storage, then Tyng & Brotherson became liable to account to Cole for such corn from the

time they knew of his purchase, and had a lien on the corn for any storage that might be due them at the time of delivery; and if the jury should further believe, from the evidence, that other corn was delivered by Tyng & Brotherson to Cole in lieu of that originally purchased, and that the same was accepted by Cole with knowledge that it was different corn, and without objection made on that account by Cole, the fact that the corn delivered was not the same bought, would not divest the lien for storage, or deprive Tyng & Brotherson of any right they might otherwise have to recover for such storage.

6.   If the jury find, from the evidence, that Cole owned the corn when the storage accrued, and purchased the corn of Kellogg with the knowledge that it would be liable to storage if left in the warehouse of the plaintiffs after a certain date, and with the understanding that he was to pay any storage which might accrue, then if the jury should further believe, from the evidence, that storage did rightfully accrue to the plaintiffs upon such corn, the jury should find for the plaintiffs the amount of such storage, subject to any set-off which may be proved or admitted in the case.

7.   If the jury believe, from the evidence, that a warehouse receipt was given by Tyng & Brotherson, for the corn in question, and that the same was assigned to Cole, then all the provisions of said receipt should take effect, as well against as in favor of Cole, and if, by such receipt, and the proofs in the case, storage was properly chargeable on the corn when delivered to Cole, the liability to pay rests on Cole.

8.   If the jury believe, from the evidence, that Tyng & Brotherson, during the spring and summer of 1855, were engaged in the business of buying and selling corn, and storing the same, and if they further believe that the defendant held a warehouse receipt for corn, this alone would not constitute a delivery of the corn, but it would be an acknowledgment by Tyng & Brotherson that they had on hand the quantity of corn mentioned in the receipt, and an agreement to deliver the quantity of corn mentioned in the receipt to the person entitled to receive the same.

9.   If the jury believe, from the evidence, that Cole purchased the receipt from Walker, Kellogg & Co., then Cole took the receipt subject to the same conditions, and the claim of the plaintiffs for storage, in the same way that Kellogg, Walker & Co. would have been, had they held the same.

10.   If the jury believe, from the evidence, that Kellogg was to pay storage on the corn after June 1, 1855, and that Cole purchased the corn subject to the same conditions, and if they further believe that the plaintiffs stored the corn, or any part

thereof, after June 1, 1855, and that they delivered the corn from time to time to Cole, as called for by him, the jury should allow the plaintiffs a reasonable compensation for such storage; if the jury further believe, that the defendant purchased the receipt and corn of Kellogg, and that he took it subject to the claim of the plaintiffs for storage.

11. That though a settlement of acceptance is *prima facie* evidence of payment of prior demands, yet it is not conclusive evidence, and is subject to be rebutted by proof that any particular account was not paid.

12. That an implied contract to pay the storage in question may arise from facts and circumstances detailed in evidence, and it is not necessary to raise such implications that there should be positive proof.

Instructions for defendant:

1. The contract offered to the jury between Kellogg and Cole, is no evidence of an express agreement between plaintiffs and Cole that Cole should pay the plaintiffs for storage.

2. Unless the jury believe, from the evidence, that there was a contract, express or implied, between the plaintiffs or their agent, and Cole or his agent, that Cole should pay the plaintiffs for storage, they will find for the defendant.

3. If the jury believe, from the evidence, that after the alleged storage, the plaintiffs had a full settlement of their accounts against Cole, and made no charge for storage, the presumption is that they had no just account against Cole for storage up to the time of such settlement.

4. If the jury believe, from the evidence, that the plaintiffs had no contract, express or implied, with Cole, by which Cole was bound to pay for the storage, then, although the plaintiffs had a lien on the corn for storage, yet if they delivered the corn to Cole without insisting upon such lien, they could not afterwards recover of Cole for the storage.

5. If the jury believe, from the evidence, that the plaintiffs had given a warehouse receipt for the corn, as being in a certain warehouse, then they could not charge the defendant for storing it in any other place, unless the defendant assented to its being stored in another place, or unless some other prior holder of the receipt had assented to it, and Cole had notice of it when he purchased.

6. The plaintiffs could not charge for storing the corn, unless they stored their corn, or an equal amount of other corn, for the defendant, to fill his order when demanded.

7. If the jury believe that Cole permitted the corn to remain in the warehouse at the instance and request of the plaintiffs,

and for their benefit, the plaintiffs cannot recover storage for it while it so remained.

8.  If the plaintiffs delivered the corn to Cole, without claiming in any manner that they had any right to charge storage, and they had no contract with Cole, express or implied, by which Cole was bound to pay storage, this is *prima facie* evidence that they had not and have not a right to recover for the storage, of Cole.

9.  If the jury believe, from the evidence, that there was not sufficient corn in the warehouse of Tyng & Brotherson, at any time when called for by Cole, the holder of the receipt, to fill the demand made by him, they will find a verdict in favor of the defendant.

10.  If the jury believe, from the evidence, that there was no express or implied agreement, on the part of Cole, with Tyng & Brotherson, or their agent, or any other person for them, to pay them storage, they will find a verdict for the defendant.

MANNING & MERRIMAN, for Appellant.

J. K. COOPER, and H. GROVES, for Appellees.

BREESE, J.   When Cole purchased the warehouse receipt which the plaintiffs had given to Curtenius & Griswold, and by them transferred to Kellogg, he purchased with a knowledge that the corn was to be subject to charges for storage, if allowed to remain in the warehouse after the first day of June—it was so expressed in the receipt.   The corn was taken out in parcels by Cole, during the summer of 1855, and the last was removed in September of that year.

The plaintiffs had always corn enough on hand to satisfy the receipt, if it had been demanded, at any time, and was stored in places so convenient for Cole as to cause no objection on that account.   We think the storage was fairly due the plaintiffs, and they had a lien upon the corn for the storage.   In suffering the defendant to take it away, they do not forfeit their right to hold Cole personally bound for the storage.   The instructions given to the jury for both parties, correctly stated the law of the case, and the evidence fully sustains the verdict.   The judgment is affirmed.

*Judgment affirmed.*